Kennedy, J.,
dissenting.
{¶ 39} Respectfully, I dissent. I believe that the majority’s holding renders Civ.R. 50(A) virtually meaningless because it permits a trial court to grant a directed verdict at the close of opening statement only if a party effectively admits that the party cannot sustain a claim or defense. I would hold that a trial court may grant a motion for a directed verdict if a party fails to set forth a concise claim or defense in opening statement.
{¶ 40} Civ.R. 50 does not articulate what a court must consider in deciding whether to grant a motion for directed verdict made at the close of an opening statement. However, R.C. 2315.01(A)(1) and (2) provide that at opening statement, “[t]he plaintiff concisely shall state the plaintiff’s claim, and briefly may state the plaintiffs evidence to sustain it” and “[t]he defendant briefly shall state the defendant’s defense, and briefly may state the defendant’s evidence in support of it.” A statute and a civil rule, if complementary, must be construed in pari materia. See Knittle v. Big Turtle II Condominium Unit Owners Assn., Inc., 46 *34 Ohio App.3d 59, 61, 545 N.E.2d 916 (11th Dist.1988). Construing Civ.R. 50(A) in pari materia with R.C. 2315.01(A)(1), I would hold that when a party chooses to make an opening statement, the party must state a claim or defense in the opening statement in order to avoid a directed verdict.
{¶ 41} I agree also with the Tenth District Court of Appeals’ holding in Blankenship v. Kennard, 10th Dist. Franklin No. 92AP-415, 1993 WL 318825 (Aug. 17, 1993). In Blankenship, the plaintiffs opening statement failed to allege any negligence on the part of one defendant. The plaintiff argued that the court should incorporate the allegations in his pleadings into his opening statement by reference.
{¶ 42} The court rejected the plaintiffs argument for two reasons. First, the court stated that “[b]y the time the actual fact-finding process has begun, a plaintiff should be able to make a statement in court which concisely states the reason why a named defendant should be held liable. Simple fairness for those who are being sued demands no less.” Id. at *2.
{¶ 43} Second, the' court held that adopting the plaintiffs argument
would render Civ.R. 50(A) meaningless for all practical purposes. The only time when a directed verdict could be granted at the close of opening statement would be when the complaint also failed to state a claim upon which relief could be granted. Presumably, in such circumstances, the complaint would already have been dismissed or summary judgment would have been granted long before trial. For Civ.R. 50 to be meaningful in allowing a directed verdict at the close of opening statement, the rule must contemplate a review of what was actually set forth in opening statement.

Id.

{¶ 44} Finally, in Brinkmoeller v. Wilson, 41 Ohio St.2d 223, 225, 325 N.E.2d 233 (1975), this court considered a plaintiffs opening statement and admissions by the defendant in determining whether to grant a motion for a directed verdict at the close of an opening statement.
{¶ 45} Therefore, I would hold that a trial court may grant a motion for a directed verdict if a party fails to set forth a concise claim or defense in the party’s opening statement. In determining whether a party has set forth a concise claim or defense, the court may consider only the opening statement and any admissions that were made in a party’s answer or pursuant to Civ.R. 36. In making that analysis,
*35 [a] trial court should exercise great caution in sustaining a motion for a directed verdict on the opening statement of counsel; it must be clear that all the facts expected to be proved, and those that have been stated, do not constitute a cause of action or a defense, and the statement must be liberally construed in favor of the party against whom the motion has been made.
Brinkmoeller, at syllabus.
Stating a Medical-Malpractice Claim During Opening Statement
{¶ 46} A plaintiff may avoid a directed verdict at the close of an opening statement if he or she sets forth a prima facie case of medical malpractice in opening statement. See Berlin v. Cleveland Clinic Found., 8th Dist. Cuyahoga No. 85123, 2005-Ohio-4160, 2005 WL 1926049, ¶ 56-58. A prima facie case of medical malpractice requires a “showing that: (1) the physician deviated from the ordinary standard of care exercised by other physicians, i.e. the physician was negligent and (2) such deviation was the proximate cause of the patient’s injury.” Egleston v. Fell, 6th Dist. Lucas No. L-95-127, 1996 WL 50161, *2 (Feb. 9,1996), citing Bruni v. Tatsumi, 46 Ohio St.2d 127, 346 N.E.2d 673 (1976), paragraph one of the syllabus.
Parrish’s Malpractice Case
{¶ 47} While in large part the majority opinion sets forth the cogent facts, in my view there are some important facts that have been omitted. First, Parrish dismissed Dr. Skocik from the case. After Dr. Skocik was dismissed from the case, Parrish deposed Dr. Jones’s expert witness, Dr. Writesel, who opined that Dr. Skocik had “grossly mismanaged” Parrish’s care. Because of Dr. Writesel’s testimony, Parrish amended his complaint to add Dr. Skocik as a defendant for a second time.
{¶ 48} Second, Dr. Skocik’s answer denied breaching any standard of care, and there are no Civ.R. 36 admissions by Dr. Skocik in the record.
{¶ 49} And finally, when discussing Dr. Skocik’s motion for a directed verdict, the trial judge asked Dr. Jones’s counsel if he had “any words of wisdom.” Counsel responded: “Judge I think this is an issue between the plaintiff and the defendant. I don’t know that I have a dog in this hunt. I mean this — the opening — the opening statement of the plaintiff is what their case is against Doctor Skocik and against me. I do not have a cross-claim against Doctor Skocik.”
Parrish’s Opening Statement
{¶ 50} The following are excerpts from Parrish’s opening statement at trial:
*36 Let me get started. There’s two rules in medicine that every doctor in this case is going to agree on. That a doctor should never place his patient in unnecessary danger and two, a doctor should always attempt to do what is safest for his patient. If a doctor violates these rules then he is responsible for the harm he causes.
We have sued Doctor Jones. We have sued Doctor Jones because he has failed to meet the standard of care required of a physician discharging a patient like Karen Parrish. Doctor Jones was Karen’s attending physician. He was her neurology specialist — he was treating her Guillain-Barre Syndrome. He was working with other consultants to assist him in making sure Karen was kept safe. He was her discharging physician. He’s the one who filled out the continuity of care and told the other facility what to do until a doctor came and saw her. Doctor Jones will tell you that he knew on the day he discharged her that Karen was still at high risk for developing blood clots. He knew that Doctor Saad had her on D.V.T. prophylaxis. Blood clot protection. Lovenox. Doctor Jones will admit that Lovenox was the most effective way — and all the doctors will admit this — that Lovenox was the most effective way while Karen was still immobile, until she could get that strength back to pump her calf muscles, Lovenox was the most effective way of keeping those blood clots from forming. But Doctor Jones failed to put Lovenox or D.V.T. prophylaxis onto his continuity of care form.
I had this case reviewed by a neurologist by the name of Joe Campel-lone. He is a neurologist out of the Philadelphia area, Jersey, who has a special interest in Guillain-Barre, he’s seen a lot of it in his time and he’s looked at this case and he discharges patients. * * * Doctor Campellone will tell you Lovenox needed to be given to Karen as soon as she got within that twenty four hour period, as soon as she got to the Chillicothe Rehab. Doctor Campellone will tell you that in medical probability, more likely than not, if Karen was on the Lovenox as she should have been, the blood clots would not have formed and those blood clots would not have traveled to her lung and she would not have died.
Other experts will say the same thing. Doctor Skocik will have two experts here. Doctor Cefalu, a geriatric expert, a person who works in the nursing home setting and Doctor Wald, a neurologist * * *. They will testify to the same thing, that Karen was at a high risk for clots. She needed to be on Lovenox and it was Doctor Jones’ responsibility to have *37 her on the Lovenox. One of Doctor Jones’ own experts, Doctor Writ[e]sel, will say the same thing, that she needed to be on the Lovenox. Doctor Jones didn’t do it. He chose not to do that. He chose to terminate the Lovenox and hope something else would happen. When he didn’t put the Lovenox or the D.V.T. prophylaxis on that, he chose not to do what was safe and he put Karen Parrish in unnecessary harm. Doctor Jones has refused to take responsibility for the harm he caused and that is why we’re here. That’s why we’re here.
* * * Doctor Jones, through his attorneys, have hired a medical expert, Doctor Writ[e]sel who I had mentioned, who will tell you that it was Doctor Skocik’s fault. That it was Doctor Skocik’s fault for not ordering the proper D.V.T. prophylaxis in time. I’ll let Doctor Skocik’s attorneys argue for Doctor Skocik about that. But, there is a reason for continuity of care forms. That’s the communication bridge between one doctor to the next so that the patient doesn’t get lost.
After all the evidence is presented on these issues, I believe you’ll find that Doctor Jones just forgot. I think he just forgot to put the D.V.T. prophylaxis in there. He ran a red light. Anyone can make a mistake, but when you make a mistake, it is wrong to try to evade your responsibility, that’s why we’re here. You have the power as a jury, after listening to the evidence, you have the power to hold Doctor Jones responsible for the harm he caused.
Parrish Failed to Set Forth a Prima Facie Medical-Malpractice Claim Against Dr. Skocik in the Opening Statement
{¶ 51} At the close of Parrish’s opening statement, Dr. Skocik’s counsel moved for a directed verdict. After a discussion between the judge and counsel, and without giving Parrish’s counsel an opportunity to amend his opening statement, the trial court granted Dr. Skocik’s motion for a directed verdict.
{¶ 52} In his opening statement, Parrish’s counsel set forth a prima facie case of medical malpractice against Dr. Jones. However, even construing the facts in a light most favorable to Parrish, he did not set forth a prima facie claim of malpractice against Dr. Skocik. Parrish did not claim that Dr. Skocik had breached a standard of care regarding Karen Parrish’s care or that any breach of care proximately caused her death. And Dr. Skocik made no admissions in his answer or pursuant to Civ.R. 36 that would assist Parrish in making his medical-malpractice case against Dr. Skocik.
*38 Rourke & Blumenthal, L.L.P., Kenneth S. Blumenthal, and Jonathan R. Stoudt, for appellee.
Arnold, Todaro & Welch Co., L.P.A., Kevin W. Popham, and Gregory B. Poliano, for appellants.
{¶ 53} Construing the facts in a light most favorable to Parrish, Parrish merely asserted that Dr. Jones had an expert who would say that it was Dr. Skocik’s fault and that Parrish would let Dr. Skocik’s lawyer argue for him. However, Dr. Jones never filed a cross-claim against Dr. Skocik. Therefore, Dr. Jones was not obligated to set forth a claim or defense against Dr. Skocik, and the question whether Dr. Jones could or would establish a claim or defense against Dr. Skocik was not relevant when the trial court was ruling on Dr. Skocik’s motion for directed verdict at the close of Parrish’s opening statement.
{¶ 54} Therefore, I would reverse the judgment of the court of appeals, reinstate the judgment of the trial court granting Dr. Skocik’s motion for a directed verdict, and remand the case for dismissal. Accordingly, I respectfully dissent.
O’Donnell, J., concurs in the foregoing opinion.